Case number 21-3848, Jeff Franke et al. v. Norfolk Southern Railway Company et al. All arguments to be 15 minutes for plaintiffs, 15 minutes to be shared by the defendants. Ms. E.J. Leiserman for the appellants. E.J. Leiserman for all three plaintiffs, five minutes have been reserved. First, I'd like to address this court about jurisdiction. The court below did not have jurisdiction. They asked that this case be removed solely on the grounds of an affirmative defense, and the affirmative defense is preemption. They well could have raised preemption in the state court. It would not have been the first time a state court has had to deal with that. Let me ask you this question. I'm confused. When I read the original complaint, why is it just not arising under federal law? I mean, there are allegations about complying with the Railway Labor Act. There's an accusation of fraud under federal statutes. There's a seeking of review of the board, which is obviously exclusively within the federal courts. So why is it not enough just to say that the case arises under just regular federal question jurisdiction? In this complaint, we also alleged fraud, state fraud as well as federal common law fraud. The remedies in fraud are remedies that cannot be given by a public law board in an arbitration. I agree with you, but what I'm saying is if you're alleging that there's federal common law fraud, why is that not a federal question? It just arises under federal law. Why do we care about preemption even anymore? Well, many times federal law is joint jurisdiction, such as the FVLA. It can be brought in federal court and state court, not this. This is correctly removed to federal court, but not an affirmative defense. And even in federal court, they would have had to deal with the state issues of fraud. Yeah, but you could have supplemental jurisdiction over the state issues of fraud. But the question is whether your original complaint arises under federal law because you are challenging, for instance, the nature of the arbitrator in a collective bargaining agreed arbitration. I think that's correct. I think it is in that nature, in that fashion, it is an issue of federal law. So why is your complaint not arising under federal law? Is it simply because you're saying that your remedy is a state fraud remedy? No, we're saying that a portion of the complaint is arising under federal law. It is the Railway Labor Act. Then why is there not proper removal power if part of the complaint? Like if you had one claim under the RLA and one claim under state fraud, could that case be removed by the defendants here? I think we've asserted no because this court has said time and again, affirmative defenses cannot be grounds for removal. That was the basis of our argument. And it has been said by the Sixth Circuit over and over. Affirmative defense is not appropriate for removal. But there is no question it is a federal, they're federal causes of action in addition to the state causes of action, yes. And are you claiming the federal causes of action in your original complaint? Yes. Yes. Actually, there's only one complaint. We were denied the opportunity to amend the complaint. So you're saying here that your complaint raises federal causes of action and state causes of action? Correct. I apologize for laryngitis. I have the same, so I understand. Yes. Also, if there is a suggestion by the defense that there was no motion to remand, that's not fair either because there was an attempt to file a motion in the federal court to remand and we were denied this. If you look at the docket entry for November 13 of 2020, you will see that there was a telephone conversation of the court and all of the parties where we requested that and the judge made it clear we are not to file a motion for remand. Having addressed remand, I'd like to talk about Which judge's order was that? Was that Judge Zuhairi or Judge Knapp? You're testing my memory. It was Judge Zuhairi, I believe. With respect to the decision below, the court correctly found that fraud is a grounds to hear a Railway Labor Act arbitration matter. It found that we didn't meet the elements. We take issue with that. What the court said below? This court said the so-called extrinsic fraud will cause the innocent party to lose regardless of its argument because the case is not decided on its merits. And the court further relies much on the James case, which is still down below in district court. All counsel in this case are also the counsel in the James case. The James case is a much older case than this, even though this came to the Court of Appeals first. Since the James decision, much has come to light, which was Can I ask you a question? I'm a little confused. I read your briefing as not really challenging the merits of the dismissal, really just challenging the preemption and jurisdiction. Are you saying that even if you are properly in federal court, you should have been able to pursue your claim? Absolutely. Okay. And under the ground in 153 that there was fraud? Absolutely. Okay. We contend. I'm not sure that's clear from your briefing, but let me ask you this. If you are alleging fraud in challenging an arbitration, like in a petition for review or something, do you have to meet 9B? Do you have to plead fraud? Yes. And we did meet 9B. Okay. All right. So you're saying you do. What is alleged here is that the neutral, who is really referred to as the arbitrator, because wherever the neutral decides, that's the decision. Both Mr. Ray, the neutral arbitrator, had an obligation ethically, as did the vice president of the union, to alert and tell these three people that this arbitrator was a retired vice president of labor relations of the very defendant railroad who's participating in the arbitration. We also alleged that he was receiving both retirement benefits and health benefits from the very railroad. There was a clear conflict of interest. And the error of the fact that Why is that a jurisdictional kind of an issue? Why couldn't you simply, if that was the case and you believed it, why couldn't you simply ask that the arbitrator be replaced or something like that or made a motion to that effect? It's an excellent question. And the answer is the error here is not just simply commission, omission. These three men had no idea of this man's background. The union had an obligation to tell them who he was. And he had an obligation to tell them one other thing. Well, I mean, the background that you're alleging, all that has not been adjudicated, so that's not exactly a settled factual matter for purposes of this appeal. That's correct. And that was one of the thoughts of Judge Knapp in his opinion is that we didn't have enough just making that assertion. And it should be known that at no time, in pleadings or otherwise, have we ever denied this. There's only one thing more that we could have shown. And those are records possessed by Norfolk Southern. And they're not going to give them to these three men to show that he's receiving these benefits, nor are they going to give them to the union. That is the only thing that could have satisfied what the court below wanted. And we have no access to it. Had they given us a modicum of discovery, two interrogatories, two requests for production of documents, that issue would be resolved. This should never have been dismissed prior to our opportunity to answer the question that you just presented. We had no ability to do so. Was it dismissed on failure to state a claim as opposed to on the basis of the allegations in the complaint? I think reading Judge Knapp's opinion, it was dismissed on both. Failure to state a claim. I think Judge Knapp said that the claim doesn't exist because we didn't meet the elements. So you didn't, my reading was that he said that you didn't meet the elements vis-a-vis the Rule 9b fraud allegations, that the specificity and particularity requirements were not satisfied. Yes, in addition to the fraud elements. And I would say as far as 9b, what he said was, if we failed to satisfy 9b, a complaint of fraud at a minimum must allege the time, the place, and the content of the misrepresentation. The time and the place were obvious at arbitration. And if I have the time, where the arbitration took place is very questionable. They should all take place in Washington. This took place at the headquarters of Norfolk Southern Railroad in Virginia. I see your red light is on, so thank you. We'll give you your rebuttal time. May it please the court. My name is John Lewis, and I'm counsel for the Norfolk Southern Railway Company. Based on the agreement of Appleese, I will be speaking eight minutes, as you all probably know. Counsel for appellants argues that they should be able to, they should have been able to bring claims for fraud in the railway arbitral process under state law because no interpretation of relevant collective bargaining agreements was required. This is not the case. As an entry matter, there were two complaints that we're dealing with in this case, two filed complaints. The original was filed in the Court of Common Pleas of Lucas County and then removed. The second one was filed in federal court, and that was on 10-27-20. So there's two complaints that were actually filed. There were other attempts by appellants to amend, file additional complaints that were denied. So the complaint that was filed in federal court, you are not challenging the validity of allowing that complaint, correct? No, no. I mean, that was considered, and it has the same infirmities, and I'm going to talk about that in a minute, as the original. So you're going to view the second complaint as the original complaint? Well, the judge looked at both, but he made his decision on the motion to dismiss on the second complaint. And we don't believe that you can proceed under these fraud claims under state law for a number of reasons. But it's clear to us what the appellants are doing is trying to do an end run. They're essentially attacking the award. They're just trying to do it in different ways. Both complaints, we feel, demonstrate that it's a thinly veiled end run around the RLA-specifically mandated procedures. But the RLA says that you can attack an award on the basis of fraud, right? Yes, but they repeatedly said. I mean, he just said here, I thought I heard him saying that that's basically what they were doing. Maybe that's wrong, but why? Well, that's not what he said in court. What he said in court is it's fraud, but it's common law fraud, and a state claim should be handled by state court, should be remanded, one of the arguments that was made. But your argument is he's making a state law fraud claim, but you assume, okay, so we're in federal court. He said that he's making some federal claims, so it seems like we should be in federal court. The state law, the fraud claim, I assume your argument is it's preempted, right? Correct. So once it's preempted, but we're in federal court, what do we do? Do we just dismiss the case, or can we construe his fraud allegation as an RLA fraud allegation, and not a state fraud allegation, and say, okay, fine, you can't make an Ohio state law fraud claim, but you can attack the award on the basis of fraud. And if we look at this complaint, why doesn't he get to go forward on that ground? Because he never tried to do it. His argument throughout all this, contrary to some of the things that he said today, was this is state. This is a state claim. We want to pursue it. But your argument the whole way through has been what he's really trying to do is bring a federal claim for fraud, right? That he's trying to get around. He's trying to end. But so if we say, okay, fine, he's not trying to, there is no end run. He's actually working within the RLA, and within the RLA, they do get to challenge on the basis of fraud. So why wouldn't it, I mean, bring it back to that point? Well, and that was never the avenue that he was going down. We argue that, but his argument up to the very end in front of Judge Knapp is, look, if you're going to dismiss this, you should send it, remand it, back to state court so it could proceed there. What we're saying is, and have said all the way through, is this is preempted. It's preempted because of the claims. Hey, let me ask you this question. When I read Judge Knapp's order and he's talking about fraud, he's not talking about Ohio State fraud. He doesn't go through the elements, right? We clearly briefed the federal, yes. What he talks about is, I believe he calls it RLA fraud, right? So he's treating it as a review proceeding at that point, isn't he? He's, I think, looking at it as it should have been analyzed under the Railway Labor Act and the specific procedures that challenge fraud, saying these aren't met. This isn't met. It has to be, it's not fraud that the railroad or fraud that the union separately engage in. It has to be as part of the minor dispute mechanism. Okay, so forgive me, I'm thoroughly confused about this case now because it's kind of rolling out not in a way that I anticipated based on the briefing. I don't know what, so if Judge Knapp is treating it as an RLA fraud claim and your opponent is saying today it's an RLA fraud claim, so we should look at it as an RLA fraud case then, properly in federal court. And then I guess my question would be, it's unclear to me that 9B applies in that case, but I guess it does, I don't know. Your opponent says it does and it would be to his advantage, so we'll apply 9B. And then why has he not met 9B under a, if he had filed a petition for review and said this is not fraud, this was fraudulent? Well, first of all, I think he contested that it was properly removed and that there was a federal question. I think we're past that now. It's clear that there is based both upon the reconstruction and the analysis of the award, but also he's getting into the duty of fair representation that involves the unions. I'm not going to talk about that. I think Judge Knapp was clear after looking at all the case law we cited under RLA fraud and we cited many, many cases, all the existing cases we could find, in fact, that it didn't meet the standards for RLA. There was no fraud because it wasn't among the arbitrators. There was no evidence. He was trying to allege fraud and his position changed, but he was trying to allege fraud somehow that the union, union officials, and it was kind of hazy, but the carrier were involved. That is not appropriate basis to overturn an award issued by a public law board or a special board of adjustment that we have in this case. There are three awards that were issued. So you got the awards issued. But his basic argument is that the arbitrator had a conflict of interest and was self-interested. Excellent question. And the conflict of interest was vis-a-vis your client. All this was online. The arbitrators under the National Mediation Board, they have to have experience. This arbitrator was an official at the railroad. He was also a union officer. So he was on both sides. You have to have 15 years of experience in collective bargaining and administration work under the Railway Labor Act to understand it. All his bio, all his background was put online by the National Mediation Board. There was no attempt, none, to hide that. He had been chosen by other unions and other carriers in scores of other cases. So it's not like this guy was. One of the arguments of your opponent is that this arbitrator was in collusion not only with Norfolk and Southern but also with the union to throw cases and that the result of all the arbitrations, of the 80 arbitrations, were that only one employee was ever reinstated. So that argument is that. . . That's incorrect, but okay. That's what I have gleaned from what the argument was. So assuming that this is properly in federal court, what is the basis for saying that the complaint should be dismissed at the failure to state a claim? He doesn't meet the requirements of a proper claim under the Railway Labor Act, and we've cited the. . . Okay, and then you're saying he also cannot state a state law fraud claim. We're saying that that's preempted. Because it's preempted. And are you relying on complete preemption or ordinary preemption principles in this case? Well, I think we're getting kind of in the mud on this. The Railway Labor Act preemption is broad, but it's not complete. What we're saying is when you bring claims that talk about the Railway Labor Act, talk about the rights of the union, talk about the collective bargaining agreement, that is preempted under the Railway Labor Act. Clearly it cuts a swath because it wants to quickly and finally review and resolve disputes in the workplace involving railroads. That's what it does. It does anything that tries to do an end run, and there are a number of cases that this Court has handed down that go to that point, that not everything, whether it's the Emsweiler case that we've cited, the Murray case, or BLET v. UTU, that's a 2012 Sixth Circuit case, they've looked very specifically as to what is required. And if people are trying to do end arounds, they call them on it, and they say, no, the RLA preempts that. Many of the claims here, and Mr. Leeserman, in his past briefing, has indicated what he wants is to get into state court and have a state fraud claim prosecuted. To that, the railroad has responded that that would be detrimental, and Judge Knapp agreed that would be detrimental and undo the entire process. Instead of uniformity of federal law, you would have 50 states presumably, if it goes forward, deciding was this fraudulent, wasn't fraudulent. And the complaint, if you look at paragraphs 16, 68, 30, and this is the amended complaint, 54 and 82, they're talking about the RLA, they're talking about the collective bar agreement. Due to this fraudulent conduct, Jeff Frank is entitled to judicial review of the public law board decisions upholding his termination. I mean, that's one. I think your time is up, so if you want your colleagues to have their time. I will shut up. Thank you. You should let your colleagues talk. May it please the Court, my name is James Petroff. I'm here on behalf of the Brotherhood of Locomotive Engineer and Trainman, which I'll refer to as the BLET. We concur fully with Norfolk Southern, in this case, about the arguments that they've rendered. I'm here just to talk for four minutes, if I may, about the duty of fair representation claims, which are important to the union and important to this Court. Now, Plaintiff, in this case, has made the argument, and this is, to use another sports analogy, a curveball today, that he was bringing a federal challenge under the Railway Labor Act for fraud because he disavowed that in the lower court, and so I think those arguments are waived. But in his brief, he argues that if there is no state fraud claim, then there is no recourse for the union throwing the case. And that's the basis of his claim, that the union threw the case. Well, of course, I think he just forgot that he sued in the James case that you heard about, under the duty of fair representation, under these same allegations that David Ray, the arbitrator, he had worked at the company before, and he alleges on information and belief, without any information, that he had a retirement plan. Of course, Judge Carr rejected those. It says those don't meet the duty of fair representation. So we have the end around to file in state court on a fraud claim. And, you know. Is there an element of the duty of fair representation that the union has to exercise some kind of due diligence or something in selecting arbitrators for these kinds of panels? The standard for this kind of activity is set forth in Vaca v. Sipes in 1969, that the union has to act, actions cannot be arbitrary, discriminatory, or in bad faith. In Airline Pilots v. O'Neill, the Supreme Court of the United States says, on the arbitrary element, it has to be, the union has to have some rational basis. Like, you know, the court looking at the legislator's decision under the Constitution. It's a rational basis test for the union's decision. That's a high, high standard. And that's why he doesn't want to go and have that kind of claim here on the selection of the arbitrator. If the union can articulate, Your Honor, a rational basis for why you're selecting this guy, David Ray, who's a splitter, he doesn't give back pay very often. But he rules for the union on discharges 50% of the time. Well, that's not too bad if I have a railroad guy that has committed some sort of misconduct. Because other arbitrators might say, you don't win at all. Is that something we could do, though, on a motion to dismiss? Like, even if this, I don't know if this, I don't know, again, I'm confused about this case right now. So I don't know whether that claim is pled or adequately pled or is even in there. But if it were in there, it seems to me some of what you said and some of what your friend said, that sounds like we would need some record evidence on that. We couldn't just do it on the face of the complaint. Is that right? Well, my second point here is, you know, which is he hasn't brought the duty of fair representation claim that he should have. Because he's trying to avoid that. An essential element of that claim in arbitration is that you show Tate, which is the breach of the duty of fair representation created a bad outcome in arbitration. Now, he's saying here in his briefing, in his reply brief, that he's not contesting the outcomes of the awards. That's in his footnote. He's not contesting them because he knows, he felt that obviously that that would mean he's going to be preempted and get into federal court. So he's not contesting it. So what does that leave then, Your Honor? What does that leave here? We have a state court claim, an end around the duty of fair representation, which is 78 years of law that this court has said is a complete preemption under federal law. Seventy-eight years saying you can't have state court action saying that, well, the union's liable for negligence. The union's liable for misrepresentation. Because we have standards that are well-defined on the duty of fair representation. If he's allowed to do this, which is not argue any taint in a duty of fair representation case that he's couched his fraud, it opens the door to the floodgates of cases against Norfolk Southern and against the unions, because that's the hybrid DFR case. You bring it up against the company and the union together. And you're going to have these amorphous claims in state court against the union saying that, well, you didn't select the arbitrator. You should have put in, you're negligent, and you should have put in these evidence in the arbitration that I felt should have gone in. You used the word completely preempted. Yes. Which case are you relying on? This court has not decided that issue under the Railway Labor Act. You decided it. We cite the glass potters, molders and potters case. Okay. We have that from the Sixth Circuit that says under the NLRA, this area is completely preempted. This area meaning fair representation? Fair representation claims. You cannot. This is the Garmin preemption point. This is San Diego Building Trades versus Garmin. You're saying Garmin preemption is complete preemption. Complete preemption. And with respect to other circuits, I believe the Second, the Third, and the Eleventh Circuits have said that in this particular context, it is complete preemption. And they have accepted that. Just to clarify in my own mind, this is with respect to fair representation. With respect to the claims against Norfolk and Southern. Right. You know, this is complete preemption. And, you know, when you talk about, well, it was a defense here. It seems to be, you know, he seems to be conceding that he had federal claims now, which is the first time I've seen that. But, you know, the complete preemption like this is a, gets over the well-plated complaint rule. It's a jurisdictional thing. And it's not a defense. But if he, but if the claims arise under federal law, do we need to deal with complete preemption? I'm sorry. We have to deal with preemption, I assume, because even if he's in federal court, we have to decide whether his state claims survive or not. But that's just ordinary preemption. We wouldn't need to worry about whether there's complete preemption, right? If we're, if we say you're in federal court. I think on this, which I'm saying here, Your Honor, for my client, and I believe firmly that the issue of complete preemption of the duty of fair representation is critical. Because, as I say, the courts have said we can't have a body of state laws in 50 other jurisdictions saying that you have committed negligence.  And so the court cannot sanction that, which would be really, truly unprecedented in, you know, in 78 years. Thank you. Thank you. May it please the Court, Your Honors. My name is Joseph Mando. I'm here appearing on behalf of my client Norfolk Southern Northern Lines Wheeling and Lake Erie General Committee of Adjustment. I'm going to refer to that just as the general committee. We, along with the BLET, which my colleague Jim Petroff is here representing, are the two labor unions at issue in this case. I just want to respond to a couple of things. As with the panel, I was a bit confused when I heard for the first time today that we're dealing with some federal claims. Because the bulk of the appellant's brief is trying to get around the federal claims that we believe that he has actually tried to allege or actually tried to avoid. I wanted to point out a couple of things. The obligation that the appellate's counsel referred to alert the plaintiffs about Mr. Ray and his apparent connections to Norfolk Southern, that would only be derived from the duty of fair representation. There's no independent state law that would provide for that sort of an obligation. So I believe in the oral argument today, we're hearing again that this is a DFR case, that he tried to get around the heightened standard that is applicable to union conduct and union decisions in arbitration and representation of members. And that's what we have here. All of the injuries alleged in this case flow from adverse arbitration awards. There were three of them. The three appellants in this case, their terminations were upheld by Arbitrator Ray, who served as a neutral on a panel. All of those arbitration awards are derived expressly from the parties' collective bargaining agreements. If you have rights that are derived from a collective bargaining agreement, as Judge Knapp said in his order at footnote six, there's no way to get around that without interpreting the collective bargaining agreement. The collective bargaining agreement provides the process for the selection of the arbitrator. It provides the standard of just cause that governs a termination or disciplinary decision. So for Mr. Leisureman and the appellants to, again, try the end run here, what they're trying to do is they're trying to- Would you agree that if the union and the company colluded and picked an arbitrator who then just had a list of times that he would come out for the union and times that he would come out for the company without regard to what the individual cases were, that would be problematic, right? I think they would have to meet the standard under VACA. I mean, I think there could be an argument. So let's assume that that's what he's suggesting and that, in theory, you could challenge an award on that basis, maybe on the fraud basis. I don't know. It's one of the listed things in 153. I guess the question is just has he pled enough that would get him past that hurdle. No, Your Honor, I don't believe he has it. I don't believe Judge Knapp found that he had. And what I would say is there is a mechanism under the RLA, and it's one of the narrowest at law, to challenge an adverse arbitration award on the basis of fraud. Mr. Leisureman and the appellants opted not to do that in this case and opted exclusively to go through a state law fraud remedy. That's what they chose. But you don't think he can do a state law? That's the whole thing is that you guys don't think he can do the state law, right? So what you're really saying is he's actually just challenging it on the basis of fraud because he can't do the state law thing. And, Your Honor. So if we accept all that, then why shouldn't we fight the battle on that front? Which is, okay, is it a fraud? In that case, what I would say is that the defendants and the appellees are saying that he didn't meet his standard of pleading appropriately under the heightened standard under the RLA. So what should he have said under the RLA? Well, I think that he needed to tailor his complaint specifically toward the, you know, he needed to meet the heightened standards for pleading fraud, which he did not meet in this case. Everything was based on information and belief. The allegation that he didn't have discovery, I don't think that saves him here. Plaintiffs are required to plead frauds with specificity, and he did not do that, as Judge Knapp found. So it's not enough to say that arbitrator Ray had this record of not providing complete relief in 80 cases or whatever it is? No, Judge Moore. I don't think that it is. And what I would note is, for the record, Mr. Leiserman did include some of those arbitration awards. And the arbitration awards, as my colleague, Mr. Petroff, mentioned, just because you don't get back pay doesn't mean it's a successful – that's not a successful award. Reinstatement rather than back pay. Correct. I misstated it. That's correct. Okay. Thank you. Thank you. I will address some of this in reverse order, if I may. Just because you don't get back pay to get your job back is a total loss, a complete loss. And they hope it isn't discovered. If we could have done discovery, simple discovery, we would show that there is a motive to this, a motive to not giving back pay when these men are constantly told on the site to violate federal law, federal rules promulgated by the Federal Railroad Administration. If they don't do so, they will be fired on frivolous charges for what they know are going to get reversed. They have lost a year to a year and a half of back pay. These cases take a year to a year and a half, and they're permitted to snicker about it. Uh-huh. Oh, yeah, you got your case back, your job back. But this is a chilling effect also to everybody in that yard. And it is a danger to the public when they're permitted to violate federal safety rules and the rules for safety under Norfolk with impurity. Why did you file your case in state court in the beginning? I mean, why didn't you just challenge it under 153 normally through the Federal District Court? We really were leaning, and I disagree that the federal causes of action have not been pledged, but we were leaning on state fraud. And when they say that we aren't contesting the outcome, that's limited. That issue is limited to state fraud and federal, common law fraud, because under common law fraud there are remedies that are not available under the Railway Labor Act. The Railway Labor Act is limited to two remedies, returning them to work and back pay. That's it. Isn't that just a decision that Congress made at one point about what this would look like, what this process would look like? There would be exclusive jurisdiction. This is what you would have to do. You'd have an arbitration proceeding if you didn't like it. Under certain limited grounds you could go to federal court and that would be it. I think Congress never anticipated fraud, Your Honor. They anticipated some fraud because they heard fraud in 153, right? Yes, and we have met that fraud. But some of the damages under state fraud are embarrassment, emotional distress, not the least. The very act of the arbitration itself, not its results, the fraudulent arbitration itself causes this type of embarrassment, emotional distress, and it also compromises the integrity of the Railway Labor Act, which is an injury to them as well. And that is what's been done here. And the collusion? The collusion is clear. By the way, this 50-50 state by this arbitrator? No, it's not 50-50. The court was correct. The 50-50 may be to other railroads where he wasn't employed, but it's not 50-50 to the railroad that's at issue where he was the vice president of labor relations, the very entity that coordinates the defense of these cases. Could your clients with this knowledge have sought a different arbitrator? Yes. Thank you. The Railway Labor Act and the National Mediation Board make it very clear. Either party, either party can decline an arbitrator. And you're not limited by the union? Absolutely not. No, many times. Well, after this case started, everybody started saying, thanks anyway, union, we'll go to Washington to the National Mediation Board. Yes, they would have declined this man, but this knowledge was withheld from them. And, yes, I think there's enough in this complaint for a duty of fair representation, but we don't need it. One of your opponents said it was a matter of public record that Mr. Ray was an official of the railroad. Over a quarter of an official of the union or the railroad? Of the railroad. I thought he was an official of the railroad. The arbitrator. Yes. If it's a public record, I'm not aware of it, and I'm not aware where to find it. And if I can't find it, how are these engineers supposed to find it? Thank you. Your red light is on. We thank all of you for your argument, and the case will be submitted.